No. 21-10133

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

FELESIA HAMILTON; TASHARA CALDWELL; BRENDA JOHNSON;
ARRISHA KNIGHT; JAMESINA ROBINSON; DEBBIE STOXSTELL;
FELICIA SMITH; TAMEKA ANDERSON-JACKSON; TAMMY ISLAND,

Plaintiffs-Appellants,

v.

DALLAS COUNTY, doing business as DALLAS COUNTY SHERIFF'S
DEPARTMENT,

Defendant-Appellee.

On Appeal from a Final Judgment of the
United States District Court for the Northern District of Texas
Case No. 3:20-CV-00313-N, Hon. David C. Godbey

**APPELLANTS' PETITION FOR REHEARING EN BANC**

Jay D. Ellwanger
David W. Henderson
Jennifer Jones Despins
ELLWANGER LAW, L.L.L.P.
8310-1 North Capital of Texas
  Hwy., Suite 190
Austin, TX 78731

James A. Vagnini
Monica Hincken
VALLI KANE & VAGNINI, L.L.P.
600 Old Country Rd., Suite 519
Garden City, NY 11530

Madeline Meth
Brian Wolfman
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW, Suite 312
Washington, D.C. 20001
(202) 661-6582
madeline.meth@georgetown.edu

Counsel for Plaintiffs-Appellants Felesia Hamilton, et al.

August 16, 2022

No. 21-10133

FELESIA HAMILTON, et al.,

Plaintiffs-Appellants

v.

DALLAS COUNTY, d/b/a DALLAS COUNTY SHERIFF'S DEPARTMENT

Defendant-Appellee

**Certificate of Interested Persons**

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

    Plaintiffs-Appellants

      Felesia Hamilton

      Tashara Caldwell

      Brenda Johnson

      Arrisha Knight

      Jamesina Robinson

      Debbie Stoxstell

      Felicia Smith

      Tameka Anderson-Jackson

      Tammy Island

  Defendant-Appellee

      Dallas County d/b/a Dallas County Sheriff's Department

Ellwanger Law, L.L.L.P.

  Jay D. Ellwanger

  David W. Henderson

  Jennifer Jones Despins

Georgetown Law Appellate Courts Immersion Clinic

  Madeline Meth

  Brian Wolfman

  Hannah Mullen

  Esthena Barlow

Valli Kane & Vagnini L.L.P.

  James A. Vagnini

  Monica Hincken

United States Department of Justice

  Anna M. Baldwin

  Pamela Karlan

  Bonnie I. Robin-Vergeer

Equal Employment Opportunity Commission

  Gwendolyn Young Reams

  Jennifer S. Goldstein

  Anne Noel Occhialino

  Jeremy D. Horowitz

American Federation of State, County, and Municipal Employees

Kyle Campbell

AFSCME Texas Correctional Employees Council

AFSCME Council 17

National Women's Law Center

  Emily Martin

  Sunu P. Chandy

  Julie Vogtman

  Laura Narefsky

Katz, Marshall & Banks, LLP

  Carolyn L. Wheeler

American Civil Liberties Union Foundation

  Gillian Thomas

American Civil Liberties Union Foundation of Texas

  Brian Klosterboer

  Savannah Kumar

  Adriana Piñon

  Andre Segura

A Better Balance

Atlanta Women for Equality

Autistic Self Advocacy Network

Black Women's Roundtable

Bold Futures NM

California Women Lawyers

Champion Women; Legal Advocacy For Girls And Women in Sport

Clearinghouse on Women's Issues

Coalition of Labor Union Women, AFL-CIO

Desiree Alliance

Equality California

Feminist Majority Foundation

GLBTQ Legal Advocates & Defenders

HOPE for All: Helping Others Prosper Economically

Impact Fund

In Our Own Voice: National Black Women's Reproductive Justice Agenda

International Action Network for Gender Equity & Law (IANGEL)

KWH Law Center for Social Justice and Change

LatinoJustice PRLDEF

League of Women Voters

Legal Aid at Work

Legal Momentum, the Women's Legal Defense and Education Fund

Legal Voice

Lift Louisiana

National Association of Social Workers (NASW)

National Association of Women Lawyers

National Council of Jewish Women

National Crittenton

National Employment Lawyers Association

National Organization for Women Foundation

National Women's Political Caucus

National Workrights Institute

New Voices for Reproductive Justice

Religious Coalition for Reproductive Choice

Service Employees International Union (SEIU)

Sikh Coalition

The Women's Law Center of Maryland

Women Employed

Women Lawyers On Guard Inc.

Women's Bar Association of the District of Columbia

Women's Law Project


August 16, 2022          /s/ Madeline Meth
                        Madeline Meth

                        Counsel for Plaintiffs-Appellants

## Rule 35(b)(1) Statement

The panel decision conflicts with decisions of the United States Supreme Court, including *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973), *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763 (1976), *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977), and *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984). The panel decision also involves a question of exceptional importance: whether the phrase "terms, conditions, or privileges of employment" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), encompasses only what this Court terms "ultimate employment decisions," or whether, as Plaintiffs-Appellants maintain, Title VII prohibits discrimination with respect to all "terms, conditions, or privileges of employment."

As indicated, Title VII forbids discrimination by an employer with respect to an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The panel held that "[t]he conduct complained of here"—an overtly sex-based scheduling policy imposed by Dallas County on female jail guards—"fits squarely within the ambit of Title VII's proscribed conduct: discrimination with respect to the terms, conditions, or privileges of one's employment because of one's sex." Panel Op. 6. Yet the panel concluded that it was required to affirm the district court's grant of the County's motion to dismiss under the rule of orderliness. *Id.* at 7-9. That is because, under this Court's precedent, only *some* discriminatory conduct—what this Court terms an "adverse employment action"—is unlawful. *Id.* And Plaintiffs had not pleaded an "adverse employment action" as that phrase is understood under this Court's "narrow[]" ultimate-employment-decision doctrine. *Id.*

This Court's ultimate-employment-decision gloss on the already atextual adverse-employment-action rule limits what constitutes actionable discrimination to decisions involving hiring, firing, compensating employees, or the like. *See* Panel Op. 7. This precedent has so distorted the meaning of "terms, conditions, or privileges" that, under the panel's decision, Dallas County is free to impose an admittedly sex-based scheduling policy, which requires female officers to invariably work on weekends while male officers can obtain full weekends off. *See id.* at 7-9. This is so even though, as the panel explained: "Surely allowing men to have full weekends off, but not women, on the basis of sex rather than a neutral factor like merit or seniority, constitutes discrimination with respect to the terms or conditions of those women's employment. And the benefits that come with seniority, here, the ability to request one's preferred days off, should amount to a privilege of employment." *Id.* at 7. Likewise, in this Circuit, an employer may demand that Black employees work outdoors in the Louisiana summer while white employees work indoors in air-conditioned comfort. *Peterson v. Linear Controls, Inc.*, 757 F. App'x 370, 373 (5th Cir. 2019), *pet. dismissed*, 140 S. Ct. 2841 (2020) (Mem.).

This Court's adverse-employment-action precedent flouts Title VII's text, Panel Op. 7, 10, 11, undermines Congress's purposes, and conflicts with other circuits' authoritative decisions, *see* Panel Op. 10; Fed. R. App. P. 35(b)(1)(B). The United States agrees with Plaintiffs-Appellants that this Court's precedent is wrong. *E.g.*, Br. for United States as Amicus Curiae at 8-10; Br. for United States as Amicus Curiae at 6, *Peterson v. Linear Controls, Inc.*, No. 18-1401, 2020 WL 1433451 (Mar. 20, 2020), *pet. dismissed*, 140 S. Ct. 2841 (2020) (Mem.). But because only the en banc Court can

reconsider binding circuit precedent, the panel felt powerless to properly resolve the exceptionally important issue presented by this appeal. As the panel put it, "this case" is "an ideal vehicle for the en banc court to reexamine [its] ultimate-employment-decision requirement" and "to achieve fidelity to the text of Title VII." Panel Op. 11. This petition should be granted.

# Table of Contents

Certificate of Interested Persons .......................................................................i

Rule 35(b)(1) Statement ................................................................................. vi

Table of Authorities ........................................................................................x

Issue Presented ............................................................................................... 1

Course of Proceedings and Case Disposition................................................ 1

Statement of the Case .................................................................................... 2

Reasons for Granting En Banc Review ........................................................ 4

I.    This Court's adverse-employment-action rule authorizes discrimination prohibited by Title VII and Texas law, necessitating en banc review..................... 4

II.   The issue presented is important, and, as the panel recognized,  only the en banc Court can properly resolve it. ....................................... 9

III.  This case is an ideal vehicle for reconsidering the adverse-employment-action rule. .............................................................................................. 12

Conclusion.................................................................................................... 12

Panel Opinion ...............................................................................................

Certificate of Compliance.............................................................................

Certificate of Service ....................................................................................

# Table of Authorities

**Cases**                                                                                      **Page(s)**

*Chambers v. District of Columbia,*
　35 F.4th 870, 874 (D.C. Cir. 2022) (en banc) ................................................ 6

*Dollis v. Rubin,*
　77 F.3d 777 (5th Cir. 1995)................................................................................ 4

*Douglas v. DynMcDermott Petroleum Operations Co.,*
　144 F.3d 364 (5th Cir. 1998) ........................................................................... 11

*Franks v. Bowman Trans. Co.,*
　424 U.S. 747 (1976) ...................................................................................... vi, 6

*Hardison v. Skinner,*
　No. 20-30643, 2022 WL 1136038 (5th Cir. Apr. 18, 2022) ........................ 4

*Hishon v. King & Spalding,*
　467 U.S. 69 (1984) ........................................................................................ vi, 8

*Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL–CIO v. Jewel Tea Co.,*
　381 U.S. 676 (1965) ........................................................................................... 7

*Lopez v. Kempthorne,*
　684 F. Supp. 2d 827 (S.D. Tex. 2010) ........................................................... 11

*L.A. Dep't of Water & Power v. Manhart,*
　435 U.S. 702 (1978) ........................................................................................... 5

*McCoy v. City of Shreveport,*
　492 F.3d 551 (5th Cir. 2007) ............................................................................ 4

*McDonnell Douglas Corp. v. Green,*
　411 U.S. 792 (1973) ...................................................................................... vi, 6

*Mylett v. City of Corpus Christi,*
　97 F. App'x 473 (5th Cir. 2004) .................................................................... 10

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
　138 S. Ct. 617 (2018) ........................................................................................ 6

**Page(s)**

*Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*,
   867 F.3d 70 (D.C. Cir. 2017) ................................................................. 6, 12

*Peterson v. Linear Controls, Inc.*,
   757 F. App'x 370 (5th Cir. 2019), *pet. dismissed*, 140 S. Ct. 2841 (2020) ............ vii, 10

*Shackelford v. Deloitte & Touche, LLP*,
   190 F.3d 398 (5th Cir. 1999) ................................................................. 11

*Threat v. City of Cleveland*,
   6 F.4th 672 (6th Cir. 2021) ............................................................ 5, 7, 8

*Trans World Airlines, Inc. v. Hardison*,
   432 U.S. 63 (1977) ........................................................................... vi, 6

## Statutes and Rule

28 U.S.C. § 1291 ..................................................................................... 1

29 U.S.C. § 623(a) ................................................................................. 9

42 U.S.C. § 1981(b) ............................................................................... 9

42 U.S.C. § 2000e-2(a)(1) ............................................................... vi, 1, 5

42 U.S.C. § 2000e-16 ........................................................................... 10

42 U.S.C. § 2000ff-1(a) ......................................................................... 9

42 U.S.C. § 12112(a) ............................................................................. 9

Tex. Lab. Code Ann. § 21.002(10) ........................................................ 7

Tex. Lab. Code Ann. § 21.051(1) ...................................................... 1, 5

Fed. R. App. P. 35(b)(1)(B) ................................................................. vii

## Other Authorities

Brief for the United States as Amicus Curiae, *Peterson v. Linear Controls,*
   *Inc.*, No. 18-1401, 2020 WL 1433451 (Mar. 20, 2020), *pet. dismissed*,
   140 S. Ct. 2841 (2020) .................................................................. vii, 4, 9

xi

**Page(s)**

Brief in Opposition, *Forgus v. Shanahan*,
No. 18-942, 2019 WL 2006239 (May 6, 2019), *cert. denied*, 141 S. Ct.
234 (2020) ................................................................................................ 9-10

EEOC Compl. Man., § 613.3, 2006 WL 4672703 (2009) ................................. 7

Webster's Third Dictionary (1961) ...................................................................... 5

## Issue Presented

Title VII of the Civil Rights Act of 1964 and the Texas Employment Discrimination Act make it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" with respect to "compensation, terms, conditions, or privileges of employment" on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); *see* Tex. Lab. Code Ann. § 21.051(1). The issue presented is whether "terms, conditions, or privileges of employment" are limited to only hiring, firing, promotions, compensation, or other practices that this Court terms "ultimate employment decisions" or whether "terms, conditions, or privileges of employment" should be understood in accordance with that phrase's ordinary meaning and Supreme Court precedent. *See* Panel Op. 6-7.

## Course of Proceedings and Case Disposition

Plaintiffs-Appellants Felesia Hamilton, Tashara Caldwell, Brenda Johnson, Arrisha Knight, Jamesina Robinson, Debbie Stoxstell, Felicia Smith, Tameka Anderson-Jackson, and Tammy Island sued Defendant Dallas County for violations of Title VII and the Texas Employment Discrimination Act. The district court dismissed Plaintiffs' complaint, disposing of all claims of all parties. ROA.108; RE 18. Plaintiffs filed a timely notice of appeal on February 16, 2021. ROA.109; RE.10. With jurisdiction under 28 U.S.C. § 1291, a panel of this Court affirmed. Panel Op. 1.

1

## Statement of the Case

This appeal arises from a grant of a motion to dismiss, and, as the panel observed, the complaint's plausible factual allegations must be taken as true and viewed in the light most favorable to Plaintiffs. Panel Op. 3-4.

Plaintiffs are female Detention Services Officers at the Dallas County jail. Panel Op. 2. Absent the sex discrimination alleged here, Defendant Dallas County uses a seniority-based system to assign officers' work schedules. *Id.* Officers are entitled to two days off per week, and they prefer to schedule this leave on weekend days. *Id.*

In April 2019, the County began denying female employees consecutive days off on coveted weekends while granting male employees full weekends off. Panel Op. 2. When Plaintiffs asked the Sergeant about the new policy, he admitted that it was "based on gender." *Id.* When Plaintiffs reported the Sergeant's discriminatory policy to the County's Human Resources department, management refused to revoke it. *Id.*

**District-court proceedings.** Plaintiffs sued the County for violations of Title VII and the Texas Employment Discrimination Act. Panel Op. 2. The County moved to dismiss Plaintiffs' complaint on one ground: that Plaintiffs failed to state a claim under Title VII and the Texas Employment Discrimination Act by not alleging a so-called "adverse employment action," which it viewed as an element of Plaintiffs' claim. *Id.* at 3.

The district court observed that the "facially discriminatory work scheduling policy demonstrates unfair treatment," but ruled that "binding precedent of this Circuit compel[led]" it "to grant Dallas County's motion." ROA.104; RE.14. The Plaintiffs failed to plead an "adverse employment action," the court held, because the women-

work-weekends policy "does not affect job duties, compensation, or benefits" or otherwise involve "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." ROA.104; RE.14; *see* Panel Op. 3.

**Panel proceedings.** Plaintiffs appealed to this Court, arguing that the County's sex-based scheduling policy constituted discrimination in the "terms, conditions, or privileges of employment." Appellant's Br. 5. The United States made the same point. Br. for United States as Amicus Curiae 8.

As a matter of first principles, the panel agreed, writing that "[t]he conduct complained of here fits squarely within the ambit of Title VII's proscribed conduct: discrimination with respect to the terms, conditions, or privileges of one's employment because of one's sex." Panel Op. 6. "Given the generally accepted meaning of" the statute's words, the panel explained, "the County would appear to have violated Title VII." *Id.* The Court continued: "Surely allowing men to have full weekends off, but not women, on the basis of sex rather than a neutral factor like merit or seniority, constitutes discrimination with respect to the terms or conditions of those women's employment. And the benefits that come with seniority, here, the ability to request one's preferred days off, should amount to a privilege of employment." *Id.* at 7 (footnote omitted).

The panel nonetheless affirmed. Panel Op. 4. Relying on longstanding circuit precedent, it was "constrain[ed]" to conclude that "the denial of weekends off is not an ultimate employment decision," meaning "the district court correctly granted the County's motion to dismiss on the grounds that Plaintiffs-Appellants did not plead an adverse employment action." *Id.* at 8. "Only the en banc court," the panel explained, could properly resolve Plaintiffs' case by reexamining this Court's ultimate-

employment-decision rule. *Id.* at 11. The panel concluded that the "strength of the allegations here—direct evidence of a workforce-wide policy denying full weekends off to women in favor of men" makes "this case an ideal vehicle for" en banc review of that rule. *Id.*

### Reasons for Granting En Banc Review

### I.   This Court's adverse-employment-action rule authorizes discrimination prohibited by Title VII and Texas law, necessitating en banc review.

The phrase "adverse employment action" appears nowhere in Title VII's text. Yet, for decades, this Court and other courts of appeals have required all Title VII disparate-treatment plaintiffs to allege that they suffered one. *See, e.g.*, *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); *McCoy v. City of Shreveport*, 492 F.3d 551, 559, 560 (5th Cir. 2007). This Court's version of the adverse-employment-action rule stands out as especially incongruous: Only an "ultimate employment decision"—a refusal to hire, a firing, a demotion, or the like—constitutes impermissible discrimination. *McCoy*, 492 F.3d at 559, 560. The United States has labeled this standard "atextual and mistaken." Br. for United States as Amicus Curiae at 6, *Peterson v. Linear Controls, Inc.*, No. 18-1401, 2020 WL 1433451 (Mar. 20, 2020), *pet. dismissed*, 140 S. Ct. 2841 (2020) (Mem.). Indeed, this Court's interpretation is at war with Title VII's text, the Supreme Court's understanding of the statute, and authoritative decisions of sister circuits. Panel Op. 6-7, 9-10; *Hardison v. Skinner*, No. 20-30643, 2022 WL 1136038 at *4 (5th Cir. Apr. 18, 2022) (Dennis, J., concurring) (urging the Court at the appropriate time "to reconsider the wisdom of [its] 'ultimate employment decision' rule, and to firmly root [its] adverse employment action jurisprudence in the text and history of Title VII").

Under Title VII and Texas's nearly identical antidiscrimination law, an employer may not "discriminate" with respect to an individual's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); *see* Tex. Lab. Code Ann. § 21.051(1). Though "[i]t's not even clear that we need dictionaries to confirm what fluent speakers of English know" about the ordinary English words at issue here, *Threat v. City of Cleveland*, 6 F.4th 672, 677 (6th Cir. 2021) (Sutton, J.), the formal definitions of those words contemporaneous with Title VII's enactment are, not surprisingly, confirmatory.

The statute prohibits discrimination in employee compensation. Beyond that, the statutory phrase "terms, conditions, or privileges" covers all other attributes of the employer-employee relationship. "Terms" are "propositions, limitations, or provisions stated or offered for the acceptance of another and determining (as in a contract) the nature and scope of the agreement." *Terms*, Webster's Third Dictionary 2358 (1961). A "condition," is "something established or agreed upon as a requisite to the doing or taking effect of something else." *Condition*, Webster's Third Dictionary 473 (1961). "Privilege" means to enjoy "a peculiar right, immunity, prerogative, or other benefit." *Privilege*, Webster's Third Dictionary 1805 (1961). Each of these words is defined broadly; taken together, they refer to "the entire spectrum of disparate treatment"—the gamut of workplace requirements, obligations, customs, and benefits that an employer imposes on, or grants to, an employee. *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) (citation omitted). Title VII is thus not limited to "ultimate" employment actions or to conduct that employers or courts view as particularly harmful. Panel Op. 6-7 (citing *Threat*, 6 F.4th at 677-78).

Quite the contrary, the statute establishes no minimum level of actionable harm. *See Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (en banc). In using the phrase "terms, conditions, or privileges," "Congress intended to prohibit all practices *in whatever form* which create inequality in employment opportunity due to discrimination." *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 763 (1976) (emphasis added). "The emphasis of both the language and the legislative history of the statute is on *eliminating* discrimination in employment." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977) (emphasis added). In other words, "Title VII tolerates no racial [or sex] discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

In sum, the statutory phrase "terms, conditions, or privileges" is simply a catchall for all incidents of an employment relationship. And "[o]nce it has been established that an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment' because of a protected characteristic, the analysis is complete." *Chambers*, 35 F.4th at 874-75. "Any additional requirement, such as [a] demand for 'objectively tangible harm,' is a judicial gloss that lacks any textual support." *Id.* at 875. This adherence to Title VII's text is why then-Judge Kavanaugh observed that "transferring an employee because of the employee's race (or denying an employee's requested transfer because of the employee's race) plainly constitutes discrimination with respect to 'compensation, terms, conditions, or privileges of employment' in violation of Title VII." *Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Kavanaugh, J., concurring). Contrary panel decisions of this Court have effectively "rewrit[ten] the statute that Congress has enacted," *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018), and should be abrogated.

***When*** **officers work is a term, condition, or privilege of employment.** Under this straightforward understanding of Title VII's text, employers may not discriminate with respect to "hours of work, or attendance since they are terms, conditions, or privileges of employment." EEOC Compl. Man., § 613.3, 2006 WL 4672703 (2009). As the Sixth Circuit puts it: "How could the *when* of employment not be a *term* of employment?" *Threat*, 6 F.4th at 677. Put differently, "the particular hours of the day and the particular days of the week during which employees shall be required to work are subjects well within the realm of … terms and conditions of employment." *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL–CIO v. Jewel Tea Co.*, 381 U.S. 676, 691 (1965) (quotation marks omitted) (observing that when an employee works is a term or condition of employment governed by collective bargaining under the National Labor Relations Act). The Texas Employment Discrimination Act explicitly identifies "hours" as workplace "terms or conditions" and defines a labor organization as existing to, among other things, bargain with respect to "wages, rates of pay, hours, or *other* terms or conditions of employment." Tex. Lab. Code Ann. § 21.002(10) (emphasis added).

Here, the County decides when Plaintiffs must work based on sex. Officers are required to work five days a week and are entitled to two days off. ROA.14; RE.23. Plaintiffs are not able to take their two days off on consecutive weekend days solely because they are female. *Id.* Plaintiffs could not simply disregard the County's sex-based scheduling policy by not reporting for work on the weekends. Had Plaintiffs failed to work their assigned shifts, the County presumably could have disciplined them, including by firing them. Male officers, on the other hand, enjoy the benefit of taking

full weekends off. The County's discriminatory, sex-based shift-assignment policy thus imposes terms or conditions on Plaintiffs' employment (or denies privileges) that would not exist absent the policy.

**Plaintiffs'** *seniority-based* **entitlement to weekday shifts is a privilege of employment.** "[B]enefits that are part of an employment contract" are terms, conditions, or privileges of employment. *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984). A benefit may be a privilege of employment even if it is not expressed in an agreement, but simply accorded by custom. *Id.* at 75. Thus, an employment benefit "may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Id.* "[T]he benefits that come with seniority, here, the ability to request one's preferred days off, should amount to a privilege of employment." Panel Op. 7 (footnote omitted); *see Threat*, 6 F.4th at 677.

Here, detention officers' days off are customarily assigned based on seniority, and officers prefer to take weekend days off. Panel Op 2. Put differently, a privilege exists entitling more-senior officers to receive their desired days off, that is, weekend days. The County's sex-based scheduling policy altered that privilege. To be sure, to ensure proper staffing, some detention officers must work some weekends. But the County may not, consistent with Title VII and the Texas Employment Discrimination Act, consign women to work weekends because they are women. Because the County's discriminatory policy altered a privilege of Plaintiffs' employment, it violated Title VII and Texas law. *See* ROA.16; RE.25.

## II.   The issue presented is important, and, as the panel recognized, only the en banc Court can properly resolve it.

In labeling this case an "ideal vehicle" for en banc review, the panel recognized the importance of the issue presented. Panel Op. 11.

Knowing which employment practices are prohibited by Title VII and other statutes banning workplace discrimination is important to both employers and employees. The Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the Genetic Information Nondiscrimination Act, and Section 1981, like Title VII, all prohibit discrimination with respect to terms, conditions, or privileges of employment. *See* 42 U.S.C. § 12112(a); 29 U.S.C. § 623(a); 42 U.S.C. § 2000ff-1(a); 42 U.S.C. § 1981(b). And like Title VII, these statutes do not include the language "adverse employment action" (nor its offshoot in this Circuit, "ultimate employment decision"). Yet current judicial doctrine requires a plaintiff alleging disparate treatment under these statutes to plead and prove one. The issue presented thus affects many employees entitled to protection under a range of important federal laws aimed at eliminating workplace discrimination.

The United States recognizes the importance of the issue presented and agrees with Plaintiffs. *See* Br. for United States as Amicus Curiae 8-10. It has argued to the Supreme Court that the adverse-employment-action doctrine, and specifically this Court's ultimate-employment-decision rule, have "no foundation" in Title VII's text, Congress's purpose, or Supreme Court precedent. Br. for United States as Amicus Curiae at 6, *Peterson v. Linear Controls, Inc.*, No. 18-1401, 2020 WL 1433451 (Mar. 20, 2020), *pet. dismissed*, 140 S. Ct. 2841 (2020) (Mem.); *accord* Br. in Opposition at 13, *Forgus*

*v. Shanahan*, No. 18-942, 2019 WL 2006239 (May 6, 2019), *cert. denied*, 141 S. Ct. 234 (2020) (Mem.).

The United States is a frequent defendant in employment-discrimination litigation. *See* 42 U.S.C. § 2000e-16. And since 2020, the Government has reiterated its disagreement with the adverse-employment-action precedent before five circuits. *See* Br. for United States as Amicus Curiae at 2 (listing relevant amicus filings). There can be no serious dispute, then, that the issue presented here is important and ripe for this Court's reevaluation.

This Court's adverse-employment-action rule imposes far-reaching consequences. As the facts here demonstrate, the precedent does more than fail to hold employers accountable for individual discriminatory acts after they have occurred. Here, the County essentially adopted this across-the-board policy: "Pay, titles, and job descriptions are based on merit without regard to sex, but we require female employees to work at least one weekend day while male employees may enjoy weekends off."

Openly discriminatory practices are often viewed as a relic of the past, but this case and others show how the adverse-employment-action doctrine emboldens employers to discriminate with legal impunity. For instance, as noted, Black employees required to work outside in the heat because they are Black—while white counterparts work inside with air conditioning—have no recourse in this Circuit. *Peterson v. Linear Controls, Inc.*, 757 F. App'x 370, 373 (5th Cir. 2019), *pet. dismissed*, 140 S. Ct. 2841 (2020) (Mem.). An admittedly "oppressive change of hours" is also viewed as perfectly lawful. *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004).

This Court's adverse-employment-action rule extends well beyond discriminatory shift assignments to effectively authorize a range of discriminatory practices. Discriminatory negative performance evaluations, *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998), or denials of training are not actionable, *see, e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (affirming district court's conclusion that "denying training to an employee is not an adverse employment action covered by Title VII"). Indeed, an employer is free, on the basis of sex, to deny female employees the opportunity to compete for performance awards because "even being totally denied a performance award is not an ultimate employment decision." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 885 (S.D. Tex. 2010). The same goes for discriminatory denials of a "telecommuting agreement" or office-space assignments. *Id.*

The ramifications of the adverse-employment-action doctrine are not fully reflected in the litigated decisions. Because in this Circuit discrimination is permissible so long as it does not involve an ultimate employment decision, an employer could, without legal consequence, require all of its Black employees to work under white supervisors, women to stand in every meeting while male counterparts sit comfortably around a table, people with disabilities to work in a "disabled-persons" annex, and older employees to write monthly reports about their retirement plans. Decades after Title VII, the ADA, and the ADEA were enacted to eliminate the workplace indignities of Jim Crow and sex-based stereotypes, to bring people with disabilities into the American mainstream, and to ensure that older Americans are judged on their merit, that cannot be right.

### III. This case is an ideal vehicle for reconsidering the adverse-employment-action rule.

As noted, the panel observed that this case is "an ideal vehicle for the en banc court to reexamine [its] ultimate-employment-decision requirement." Panel Op. 11. The district court dismissed Plaintiffs' complaint for one reason only: Plaintiffs failed to plead an adverse employment action because "[c]hanges to an employee's work schedule, such as the denial of weekends off, are not an ultimate employment decision." ROA.104; RE.14; *see* Panel Op 3. There is no alternative basis for affirming the district court's grant of the County's motion to dismiss. The failure to allege an adverse employment action was the sole ground raised in the County's motion to dismiss, ROA.35-47, and, as indicated, it is what doomed Plaintiffs' federal and state-law discrimination claims. Panel Op. 1. Moreover, the County cannot (and did not) dispute that Plaintiffs sufficiently alleged facts showing Defendant discriminated against them because, as alleged, it admits to denying Plaintiffs' weekend leave based on sex. ROA.14; RE.23.

In sum, this case presents an outcome-determinative opportunity for the Court to revisit its adverse-employment-action doctrine and "definitively establish" the "clear principle" that conduct, which "plainly constitutes discrimination" and alters an employee's "terms, conditions, or privileges of employment," violates Title VII and the Texas Employment Discrimination Act. *See Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Kavanaugh, J., concurring).

### Conclusion

This petition for rehearing en banc should be granted.

Respectfully submitted,

Jay D. Ellwanger

/s/ Madeline Meth

David W. Henderson

Madeline Meth

Jennifer Jones Despins

Brian Wolfman

Ellwanger Law, L.L.L.P.

GEORGETOWN LAW APPELLATE

8310-1 North Capital of Texas

  COURTS IMMERSION CLINIC

    Hwy., Suite 190

600 New Jersey Ave., NW, Suite 312

Austin, TX 28231

Washington, D.C. 20001

(202) 661-6582

James A. Vagnini

Monica Hincken

VALLI KANE & VAGNINI, L.L.P.

600 Old Country Rd., Suite 519

Garden City, NY 11530

Counsel for Plaintiffs-Appellants

August 16, 2022

**CERTIFICATE OF COMPLIANCE**

This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 3,844 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f). This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond.

<u>/s/ Madeline Meth</u>
Madeline Meth

Counsel for Plaintiffs-Appellants

# CERTIFICATE OF SERVICE

I certify that, on August 16, 2022, this petition was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Madeline Meth
Madeline Meth

Counsel for Plaintiffs-Appellants

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2022

Lyle W. Cayce
Clerk

No. 21-10133

---

Felesia Hamilton; Tashara Caldwell; Brenda Johnson; Arrisha Knight; Jamesina Robinson; Debbie Stoxstell; Felicia Smith; Tameka Anderson-Jackson; Tammy Island,

*Plaintiffs—Appellants*,

*versus*

Dallas County, *doing business as* Dallas County Sheriff's Department,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-313

---

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Plaintiffs-Appellants appeal the district court's order granting Defendant-Appellee's motion to dismiss under Rule 12(b)(6). Because Plaintiffs-Appellants did not plead an adverse employment action, as required under this circuit's Title VII precedent, we AFFIRM.

No. 21-10133

## I. Background

Plaintiffs-Appellants are nine female detention service officers working at the Dallas County Jail who are employed by Defendant-Appellee Dallas County Sheriff's Department. Dallas County ("the County") provides two days off per week for its detention service officers. Most officers prefer to schedule their days off on weekends. Before April 2019, Plaintiffs-Appellants' schedules were based on seniority. However, in or around April 2019,[1] a gender-based scheduling policy went into effect and only male officers were given full weekends off whereas female officers were allowed two weekdays off or one weekday and one weekend day off. Plaintiffs-Appellants alleged that "[w]hen [they] asked the [s]ergeant how scheduling was determined, he stated that it was based on gender" and explained that it would be safer for the male officers to be off during the weekends as opposed to during the week.[2] Plaintiffs-Appellants reported the new scheduling policy to their sergeant, lieutenant, chief, and human resources, all of whom declined to modify the policy. The policy remained in place at the time Plaintiffs-Appellants filed their complaint.[3]

Plaintiffs-Appellants filed a discrimination complaint with the Equal Employment Opportunity Commission and received Notice of Right to Sue Letters. On February 10, 2020, Plaintiffs-Appellants filed suit against the County for violations of Title VII and the Texas Employment Discrimination

---

[1] The record does not contain the exact date on which the County implemented the scheduling policy at issue, so it is unclear whether the old or new policy was in effect during the month of April 2019. We assume the new scheduling policy was implemented at some point in April 2019.

[2] Relevant here, male and female officers perform the same tasks, and the number of inmates during the week is the same as the number on weekends.

[3] On appeal, the County asserts that the gender-based scheduling policy was temporary. Neither party has stated if or when the policy was revoked.

Act (the "TEDA"). Specifically, they alleged that the County "engaged in the practice of discrimination with respect to the terms and conditions of Plaintiffs' employment."

On June 4, 2020, the County filed a motion to dismiss under Rule 12(b)(6) arguing that Plaintiffs-Appellants failed to state a plausible claim for relief because they did not suffer an adverse employment action. On June 25, 2020, Plaintiffs-Appellants filed a response arguing that the gender-based scheduling policy harmed their work conditions and made their jobs objectively worse. Alternatively, they requested leave to amend.

The district court granted the County's motion to dismiss. The district court acknowledged that the County's facially discriminatory scheduling policy demonstrated unfair treatment and that it was plausible that the denial of full weekends off made Plaintiffs-Appellants' jobs objectively worse. Nonetheless, "the binding precedent of this [c]ircuit compel[led]" it to hold that Plaintiffs-Appellants failed to state a claim upon which relief could be granted because they did not plead an adverse employment action. The district court granted Plaintiffs-Appellants leave to amend their complaint, but because Plaintiffs-Appellants did not amend their pleadings within thirty days, it ultimately dismissed the action with prejudice. This appeal followed.

On appeal, Plaintiffs-Appellants argue that the district court erred by considering whether the County's scheduling policy constituted an adverse employment action rather than applying the statutory text of Title VII and the TEDA. They further contend that the scheduling policy qualifies as an adverse employment action.

## II.   Standard of Review

This court reviews dismissals for failure to state a claim de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d

616, 622 (5th Cir. 2018). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    Discussion

This case presents a unique factual scenario because the employment action at issue applies to all the members of the protected group and the employer does not dispute its discriminatory intent. Instead, the County argues that Plaintiffs-Appellants failed to plead an adverse employment action. The rule of orderliness and existing Fifth Circuit precedent support the County's argument, and thus we must affirm.

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Texas's Title VII analogue, the TEDA, similarly makes it an "unlawful employment practice" for an employer to "discriminate[] . . . against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of sex. Tex. Lab. Code Ann. § 21.051(1) (1993).

A plaintiff who has exhausted her administrative remedies may prove a claim of intentional discrimination either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). This court evaluates Title VII employment discrimination cases built on circumstantial

No. 21-10133

evidence under the framework set forth in *McDonnell Douglas Corp. v. Green*.[4] *McCoy*, 492 F.3d at 556. Under that framework, the plaintiff must first establish a prima facie case of discrimination by showing that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.[5] *Id.*

The Supreme Court has held, however, that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *accord Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). When a plaintiff presents direct evidence of discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015), *as revised* (Feb. 3, 2015) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). This court has defined direct evidence as "evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). To determine whether comments in the workplace constitute "direct evidence," or only "stray remarks," this court has looked to four factors: whether the comments are (1) related to the

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

[5] If the plaintiff makes a prima facie showing, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its employment action. *McCoy*, 492 F.3d at 557. If the employer meets this burden of production, the burden shifts to the plaintiff to ultimately prove that the employer's proffered reason is instead a pretext for the real discriminatory purpose. *Id.*

plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *Etienne*, 778 F.3d at 476. All four factors are satisfied here. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Herster*, 887 F.3d at 185 (quoting *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994)).

Here, Plaintiffs-Appellants pled that their supervising sergeant stated that the scheduling policy in question was based on gender. Accepting these facts as true, Plaintiffs-Appellants have alleged direct evidence of discrimination because the sergeant's statement about the policy shows a discriminatory motive on its face. In other words, no inference or presumption is required to get from the sergeant's statement—that the new scheduling policy was based on gender—to the conclusion that Plaintiffs-Appellants were denied full weekends off because they are women.[6] As mentioned, this court rarely encounters direct evidence cases because employers seldom admit to a discriminatory motive as the sergeant did here.

The conduct complained of here fits squarely within the ambit of Title VII's proscribed conduct: discrimination with respect to the terms, conditions, or privileges of one's employment because of one's sex. Given the generally accepted meaning of those terms, the County would appear to have violated Title VII. *See Threat v. City of Cleveland*, 6 F.4th 672, 677–78 (6th Cir. 2021) (collecting definitions of "terms" and "privileges" contemporaneous to the enactment of Title VII). Moreover, the Supreme

---

[6] *See Etienne*, 778 F.3d at 476, *as revised* (Feb. 3, 2015) ("Put differently, 'no inference or presumption' is required to get from this statement—that Etienne was 'too black to do various tasks at the casino'—to the conclusion 'that race was a basis in employment decisions' made at Spanish Lake with regard to Etienne.").

Court has explained that section 703(a) of Title VII refers to "actions that affect employment or alter the conditions of the workplace," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006), and that "the particular days of the week during which employees shall be required to work are subjects well within the realm of 'wages, hours, and other terms and conditions of employment,'" *Loc. Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Jewel Tea Co.*, 381 U.S. 676, 691 (1965). Surely allowing men to have full weekends off, but not women, on the basis of sex rather than a neutral factor like merit or seniority, constitutes discrimination with respect to the terms or conditions of those women's employment. And the benefits that come with seniority,[7] here, the ability to request one's preferred days off, should amount to a privilege of employment.

Yet we are bound by this circuit's precedent, which requires a Title VII plaintiff to establish a prima facie case of discrimination by showing, *inter alia*, that she "suffered some adverse employment action by the employer." *McCoy*, 492 F.3d at 556. Further narrowing this requirement, we have held that "[a]dverse employment actions include only *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, or compensating," *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (emphasis added), *cert. denied*, 141 S. Ct. 160 (2020) (quoting *McCoy*, 492 F.3d at 559). This rule first arose in the Fifth Circuit nearly twenty-seven years ago when, in *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995), we adopted dictum from a Fourth Circuit case involving a different

---

[7] "In the area of labor relations, 'seniority' is a term that connotes length of employment. A 'seniority system' is a scheme that allots to employees ever improving employment rights and benefits as their relative lengths of permanent employment increase." *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 900 F.2d 903, 907 (6th Cir. 1990).

provision of Title VII. *See id.* at 781–782 ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.") (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).[8] Today, our circuit precedent and the rule of orderliness[9] constrain us to conclude that because the denial of weekends off is not an ultimate employment decision, the district court correctly granted the County's motion to dismiss on the grounds that Plaintiffs-Appellants did not plead an adverse employment action. *See Hernandez v. Sikorsky Support Servs., Inc.*, 495 F. App'x 435, 438 (5th Cir. 2012) (per curiam) (unpublished) (holding that a plaintiff whose supervisor denied her seniority-based preference in shift scheduling suffered no adverse employment action); *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. 2004) (per curiam)

---

[8] The Fourth Circuit has since declined to adopt the dictum from *Page*. *See Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001) ("[W]e cannot interpret the quotation from *Page* as improperly restricting § 2000e–3 adverse employment action to 'ultimate employment decisions.'").

[9] "Under our rule of orderliness, we may not overrule a prior panel decision absent an intervening change in the law, such as a statutory amendment or a decision from either the Supreme Court or our en banc court." *Thompson v. Dall. City Att'y's Off.*, 913 F.3d 464, 467 (5th Cir. 2019).

(unpublished) (holding that changes of work hours and the denial of day shifts are not adverse employment actions).[10]

The Sixth and District of Columbia Circuits recently confronted a similar dilemma. In *Threat v. City of Cleveland*, the city used a seniority-based bidding system to assign shifts to its Emergency Medical Service ("EMS") captains. 6 F.4th at 676. The captains' collective bargaining agreement allowed the city's EMS Commissioner to transfer up to four captains to a different shift, even if it conflicted with a captain's first choice. *Id.* Such was the case when the bidding process generated a schedule in which only black captains would staff a day shift. *Id.* The Commissioner then replaced one of the black captains with a white captain to "diversify the shift," but that white captain had a conflict that prevented him from working that shift. *Id.* The rebidding process yielded a similar result, with the Commissioner again reassigning a black captain to "create diversity." *Id.* Fed up with the race-based scheduling assignments, the captains brought a Title VII discrimination claim against the city. *Id.* Following discovery, the parties

---

[10] *Hernandez* and *Mylett*, though unpublished, both reflect the binding circuit precedent that we confront in this case. Both cases cite *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998), for the proposition that changes of hours and the denial of particular shifts are not adverse employment actions. But the relevant holding from *Benningfield* appeared in the context of a First Amendment retaliation claim, not a Title VII employment discrimination claim. There, in evaluating the plaintiff's First Amendment retaliation claim, this court stated that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield*, 157 F.3d at 376 (quoting *Pierce v. Tex. Dep't of Crim. Just.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). It then explained that the *Pierce* court "declined to expand the list of actionable adverse actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Id.* (citing *Pierce*, 37 F.3d at 1150). Accordingly, the definition of "adverse employment action" for First Amendment retaliation purposes is not identical to the definition for Title VII employment discrimination purposes. Thus, the repeated reliance on *Benningfield* and other First Amendment retaliation cases in our Title VII employment discrimination analyses has created doctrinal confusion.

cross-moved for summary judgment, and the district court granted the city's motion on grounds that the captains could not show a "materially adverse employment action." *Id.* at 676–77. The Sixth Circuit reversed, reasoning that its precedent construing Title VII to only cover "materially adverse employment actions" was intended to be shorthand for the statutory text and to incorporate a *de minimis* exception. *Id.* at 678–79, 682. Addressing its line of cases stating that shift changes do not count as materially adverse employment actions under Title VII, the court further explained that it had never set forth a categorical rule that actionable discrimination claims could never be based on shift changes. *Id.* at 679. It thus held that the captains had stated a cognizable claim under Title VII. *Id.*

Similarly, in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), the en banc court overruled its precedent holding that the denial or forced acceptance of a job transfer was actionable under Title VII only if the employee suffered "objectively tangible harm." *Id.* at 872. It reasoned that this rule was a "judicial gloss that lacks any textual support" from Title VII. *Id.* at 875.

The Fourth Circuit, while still requiring a showing of an adverse employment action, hews closer to the text of Title VII. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). It defines an adverse employment action as "a discriminatory act which 'adversely affect[s] "the terms, conditions, or benefits" of the plaintiff's employment.'" *Id.* It has made clear that "[c]onduct short of 'ultimate employment decisions' can constitute adverse employment action." *Id.* at 375–76.

Given these holdings by our sister circuits, our circuit's deviation from the text of Title VII leaves us with the proverbial circuit split. Unshackled by our precedent limiting Title VII to apply only to "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, or compensating an employee," Plaintiffs-Appellants would still

have to satisfy their attendant burdens for a Title VII claim. However, they would remain in court with the opportunity to do so, especially at the Rule 12(b)(6) stage where they must only plead a plausible claim to relief. But sympathetic as we may be to Plaintiffs-Appellants' position, the rule of orderliness forbids us from "overrul[ing] a prior panel decision absent an intervening change in the law, such as a statutory amendment or a decision from either the Supreme Court or our en banc court." *Ortega Garcia v. United States*, 986 F.3d 513, 532 (5th Cir. 2021). Only the en banc court can do that.

The strength of the allegations here—direct evidence of a workforce-wide policy denying full weekends off to women in favor of men—coupled with the persuasiveness of *Threat*, *Chambers*, and *James*, make this case an ideal vehicle for the en banc court to reexamine our ultimate-employment-decision requirement and harmonize our case law with our sister circuits' to achieve fidelity to the text of Title VII.

## IV.   Conclusion

Bound by the rule of orderliness, we AFFIRM the district court's order granting the County's motion to dismiss.