No. 21-10133

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

Felesia Hamilton; Tashara Caldwell; Brenda Johnson; Arrisha Knight; Jamesina Robinson; Debbie Stoxstell; Felicia Smith; Tameka Anderson-Jackson; Tammy Island,

Plaintiffs-Appellants

v.

Dallas County, doing business as Dallas County Sheriff's Department,

Defendant-Appellee

_____

On Appeal from a Final Judgment of the
United States District Court for the Northern District of Texas
Case No. 3:20-CV-00313-N, Hon. David C. Godbey

_____

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS
## FELESIA HAMILTON ET AL.

_____

Jay D. Ellwanger
David W. Henderson
Jen Despins
ELLWANGER LAW, L.L.L.P.
8310-1 North Capital of Texas
  Hwy., Suite 190
Austin, Texas 78731

James A. Vagnini
Monica Hincken
VALLI KANE & VAGNINI, L.L.P.
600 Old Country Rd., Suite 519
Garden City, NY 11530

Madeline Meth
Brian Wolfman
Hannah Mullen
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW, Suite 312
Washington, D.C. 20001
(202) 661-6582
madeline.meth@georgetown.edu

Counsel for Plaintiffs-Appellants Felesia Hamilton et al.

May 14, 2021

No. 21-10133

FELESIA HAMILTON et al.,

Plaintiffs-Appellants

v.

DALLAS COUNTY, d/b/a DALLAS COUNTY SHERIFF'S DEPARTMENT,

Defendant-Appellee

**Certificate of Interested Persons**

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellants

Felesia Hamilton

Tashara Caldwell

Brenda Johnson

Arrisha Knight

Jamesina Robinson

Debbie Stoxstell

Felicia Smith

Tameka Anderson-Jackson

Tammy Island

Defendant-Appellee

Dallas County d/b/a Dallas County Sheriff's Department

Ellwanger Law, L.L.L.P.

   Jay D. Ellwanger

   David W. Henderson

   Jen Despins

Georgetown Law Appellate Courts Immersion Clinic

   Madeline Meth

   Brian Wolfman

   Hannah Mullen

Valli Kane & Vagnini L.L.P.

   James A. Vagnini

   Monica Hincken

May 14, 2021       <u>/s/ Madeline Meth</u>
                     Madeline Meth

                     Counsel for Plaintiffs-Appellants

**Statement Regarding Oral Argument**

Plaintiffs-Appellants request oral argument and believe it would significantly aid the Court in understanding this important appeal. The issue presented concerns which discriminatory employment practices are prohibited by Title VII. The issue is frequently litigated yet remains the subject of confusion in the lower courts. Oral argument would allow the Court to explore the uncertainty with counsel.

# Table of Contents

Certificate of Interested Persons ........................................................................... i

Statement Regarding Oral Argument .................................................................. iii

Table of Authorities ............................................................................................. v

Introduction ......................................................................................................... 1

Jurisdictional Statement ....................................................................................... 1

Issue Presented .................................................................................................... 2

Statement of the Case .......................................................................................... 2

Summary of Argument ......................................................................................... 4

Standard of Review .............................................................................................. 4

Argument .............................................................................................................. 5

The County's sex-based shift-assignment policy altered Plaintiffs' terms, conditions, or privileges of employment, violating Title VII and the Texas Employment Discrimination Act. ............................................................ 5

A.    By deciding when, and with whom, Plaintiffs worked based on sex, the County discriminated with respect to the terms, conditions, or privileges of Plaintiffs' employment. .................................................... 6

B.    Title VII reaches beyond employment actions with economic consequences. ..................................................................................... 10

C.    The County's sex-based scheduling policy constitutes an "adverse employment action" even under the district court's impermissibly narrow understanding of Title VII. ..................................................... 12

Conclusion .......................................................................................................... 15

Certificate of Compliance ....................................................................................

Certificate of Service ...........................................................................................

# Table of Authorities

**Cases**                                                                    **Page(s)**

*Alvarado v. Texas Rangers*,
 492 F.3d 605 (5th Cir. 2007)..........................................................................12

*Burlington N. & Santa Fe Ry. Co. v. White*,
 548 U.S. 53 (2006) .........................................................................................7

*Click v. Copeland*,
 970 F.2d 106 (5th Cir. 1992) ........................................................................13

*Czekalski v. Peters*,
 475 F.3d 360 (D.C. Cir. 2007) ................................................................. 10, 14

*Duncan v. Walker*,
 533 U.S. 167 (2001) ......................................................................................10

*Franks v. Bowman Trans. Co.*,
 424 U.S. 747 (1976) .........................................................................................7

*Forsyth v. City of Dallas, Tex.*,
 91 F.3d 769 (5th Cir. 1996) ..........................................................................13

*Hampton v. Borough of Tinton Falls Police Dep't*,
 98 F.3d 107 (3d Cir. 1996)............................................................................14

*Ginger v. District of Columbia*,
 527 F.3d 1340 (D.C. Cir. 2008) ....................................................................14

*Greer v. St. Louis Reg'l Med. Ctr.*,
 258 F.3d 843 (8th Cir. 2001) ........................................................................15

*Hishon v. King & Spalding*,
 467 U.S. 69 (1984) ...........................................................................................9

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW
 v. Johnson Controls, Inc.*,
 499 U.S. 187 (1991) .......................................................................................11

**Page(s)**

*Judie v. Hamilton,*
    872 F.2d 919 (9th Cir. 1989) ................................................................ 10, 14

*Littell v. Hous. Indep. Sch. Dist.,*
    894 F.3d 616 (5th Cir. 2018) ........................................................................ 4

*Local Union No. 189, Amalgamated Meat Cutters and Butcher Workmen of N.*
    *Am., AFL–CIO v. Jewel Tea Co.,*
    381 U.S. 676 (1965) ..................................................................................... 8

*Los Angeles Dep't of Water & Power v. Manhart,*
    435 U.S. 702 (1978) ..................................................................................... 7

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ..................................................................................... 7

*Meritor Sav. Bank, FSB v. Vinson,*
    477 U.S. 57 (1986) .................................................................................... 11

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
    138 S. Ct. 617 (2018) .................................................................................. 8

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ................................................................................... 11

*Olmstead v. L.C. ex rel. Zimring,*
    527 U.S. 581 (1999) ..................................................................................... 6

*Ortiz-Diaz v. United States Dep't of Hous. & Urban Dev.,*
    867 F.3d 70 (2017) ................................................................................... 7-8

*Pegram v. Honeywell, Inc.,*
    361 F.3d 272 (5th Cir. 2004) ..................................................................... 12

*Perrin v. United States,*
    444 U.S. 37 (1979). ...................................................................................... 6

*Robert L. Weaver, Appellant,*
    EEOC DOC 01883168, 1988 WL 920346 (Nov. 16, 1988) ...................... 12

*Ross v. Judson Indep. Sch. Dist.,*
    993 F.3d 315 (5th Cir. 2021) ....................................................................... 5

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ................................................................11

*Spees v. James Marine, Inc.*,
  617 F.3d 380 (6th Cir. 2010) ...................................................14

*Trans World Airlines, Inc. v. Hardison*,
  432 U.S. 63 (1977) ...................................................................7

*United States v. Menasche*,
  348 U.S. 528 (1955) ................................................................10

**Statutes**

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1367(a) .....................................................................1

29 U.S.C. § 206(d)(1) .................................................................11

42 U.S.C. § 2000e(b) ..................................................................11

42 U.S.C. § 2000e-1(a) ...............................................................11

42 U.S.C. § 2000e-2(a)(1) ....................................................2, 4, 5

42 U.S.C. § 2000e-5(f) .................................................................1

Mich. Comp. Laws Ann. § 37.2102 .........................................11

Tex. Lab. Code Ann. § 21.002(10) .............................................8

Tex. Lab. Code Ann. § 21.051(1) ............................................2, 5

**Other Authorities**

EEOC Compliance Manual § 613.1(a), 2006 WL 4672701 (2009) .......................9-10, 12

EEOC Compliance Manual, § 613.3, 2006 WL 4672703 (2009) .......................................8

Webster's Third Dictionary (1961) .........................................6, 7

## Introduction

As pleaded, this case presents a simple employment-discrimination claim in which the employer admitted to deliberately treating its female employees worse than its male employees. The district court stated that Plaintiffs-Appellants plausibly alleged that Defendant-Appellee Dallas County subjected female detention officers to "objectively worse" workplace treatment than their male counterparts by instituting an explicitly sex-based scheduling policy. ROA.104, 106; RE.14, 16. The court agreed with Plaintiffs that the policy—which required female officers to invariably work weekends while allowing male officers to request full weekends off—operated to Plaintiffs' detriment, and that this discrimination "demonstrates unfair treatment." ROA.104; RE.14. Yet the court held that the discrimination did not violate Title VII of the Civil Rights Act of 1964 or the Texas Employment Discrimination Act. ROA.107; RE.17. As explained below, the County's discriminatory policy was not only unfair, but unlawful, and the district court was wrong to conclude otherwise.

## Jurisdictional Statement

Plaintiffs sued Defendant in the Northern District of Texas under Title VII and the Texas Employment Discrimination Act. The district court had subject-matter jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. § 1367(a). The district court's December 1, 2020 order granting judgment to Defendant disposed of all claims of all parties, ROA.102-107; RE.12-17, and that judgment became final on January 14, 2021, ROA.108; RE.18. Plaintiffs filed a timely notice of appeal on February 15, 2021. ROA.109; RE.10. This Court has jurisdiction under 28 U.S.C. § 1291.

## Issue Presented

Title VII of the Civil Rights Act of 1964 and the Texas Employment Discrimination Act make it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate" on the basis of sex against any individual with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); *see* Tex. Lab. Code Ann. § 21.051(1). The district court stated that Plaintiffs had plausibly alleged that the County subjected them to "objectively worse" working conditions than their male counterparts by refusing to allow them to take full weekends off work, but the court nonetheless maintained that it was required to dismiss Plaintiffs' complaint for failure to plead an adverse employment action.

The issue presented is whether the County violated Title VII and Texas law when it implemented an explicitly sex-based scheduling system prohibiting female detention officers, but not male officers, from taking full weekends off.

## Statement of the Case

This appeal arises from a grant of a motion to dismiss, and, as the district court observed, the complaint's plausible factual allegations must be taken as true and viewed in the light most favorable to Plaintiffs. ROA.103; RE.113.

Plaintiffs are female Detention Services Officers at the Dallas County jail. ROA.13; RE.22. Absent the sex discrimination alleged here, Defendant Dallas County uses a seniority-based system to assign officer work schedules. ROA.13-14; RE.22-23. Officers are entitled to two days off per week, and they prefer to schedule this leave on weekend days. ROA.14; RE.23.

2

In April 2019, the County began denying female employees consecutive days off on coveted weekends while granting male employees full weekends off. ROA.14; RE.23. When Plaintiffs asked the Sergeant about the new policy, he admitted that it was "based on gender." *Id.* In his view, "it would be unsafe for all the men to be off during the week" and "safer" for some "men to be off on weekends." *Id.* It is unclear how the sex-based system is consistent with the Sergeant's purported interest in safety because male and female officers have the same job descriptions and weekday and weekend work at the jail is the same—the tasks are the same, and there is no difference in the numbers of people present at the jail. *Id.*

When Plaintiffs reported the Sergeant's discriminatory policy to the County's Human Resources department, management refused to revoke it. ROA.14; RE.23. Plaintiffs then filed discrimination charges with the Equal Opportunity Employment Commission (EEOC), and, after receiving notice of their right to sue, sued the County. ROA.13; RE.22. The County moved to dismiss Plaintiffs' complaint on one ground: that Plaintiffs failed to state a claim under Title VII and the Texas Employment Discrimination Act by not alleging a so-called "adverse employment action," which it viewed as an element of Plaintiffs' claim. ROA.39.

According to the district court, the County's "facially discriminatory work scheduling policy demonstrates unfair treatment," but Plaintiffs failed to plead an "adverse employment action" because the women-work-weekends policy "does not affect job duties, compensation, or benefits" or otherwise involve "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." ROA.104; RE.14. The district court observed that it is "plausible that

the denial of full weekends off for Plaintiffs is objectively worse than getting whole weekends off" but maintained that this Court "has limited the use of the 'objectively worse' standard to cases involving job transfers or reassignments." ROA.106; RE.16.

## Summary of Argument

The County did not believe female detention officers could do their jobs without a male officer on each shift. So, it implemented a sex-based policy to prohibit shifts of only female officers, which prevented female officers from taking full weekends off while male officers could request weekend leave. Title VII of the Civil Rights Act of 1964 and its Texas law counterpart forbid discrimination by an employer "with respect to" an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Applying the statutory text, the County's discriminatory conduct violated federal and state law by changing when, and with whom, Plaintiffs worked, altering the terms, conditions, or privileges of their employment. Even if only *some* discriminatory practices—what this Court calls "adverse employment actions" or "ultimate employment decisions"—are unlawful, Plaintiffs sufficiently pleaded their discrimination claims. They alleged facts showing that the County's sex-based policy functioned to demote female detention officers to objectively worse roles than the positions they would be in absent the policy.

## Standard of Review

This Court reviews dismissals for failure to state a claim de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018).

## Argument

### The County's sex-based shift-assignment policy altered Plaintiffs' terms, conditions, or privileges of employment, violating Title VII and the Texas Employment Discrimination Act.

The district court held that the County's policy prohibiting female detention officers from taking full weekends off did not violate Title VII, reasoning that an employer may lawfully impose a discriminatory work schedule when it does not affect "job duties, compensation, or benefits of the Plaintiffs." ROA.104. In making this determination, the court asked the wrong legal question. It considered only whether the County's conduct constituted a narrowly defined "adverse employment action," rather than applying the statutory text.

The text is clear: Title VII of the Civil Rights Act of 1964 and Texas's nearly identical anti-discrimination law prohibit the County's discriminatory conduct. Under Section 703(a)(1) of the Civil Rights Act of 1964 and Texas's analogue, an employer may not "discriminate" with respect to an individual's hiring, discharge, "compensation, terms, conditions, or privileges of employment" on the basis of various characteristics, including sex. 42 U.S.C. § 2000e-2(a)(1); *see* Tex. Lab. Code Ann. § 21.051(1).[1]

---

[1] Because Title VII and the Texas Employment Discrimination Act are textually similar, we analyze Plaintiffs' federal and state law anti-discrimination claims together. *See Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021).

### A. By deciding when, and with whom, Plaintiffs worked based on sex, the County discriminated with respect to the terms, conditions, or privileges of Plaintiffs' employment.

To illustrate the district court's error and explain the meaning of Title VII's complete list of prohibited conduct, we begin with definitions of the statutory terms contemporaneous to Title VII's enactment and the Supreme Court's interpretations of those terms. *See Perrin v. United States*, 444 U.S. 37, 42 (1979). Section 703(a)(1) contains ordinary English words, language that demands no judicial gloss. First, "discriminate" means "to make a difference in treatment or favor on a class or categorical basis in disregard of individual merit." *Discriminate*, Webster's Third Dictionary 647-48 (1961). That is, the "normal definition of discrimination" is any "differential treatment of similarly situated groups." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 614 (1999) (Kennedy, J. concurring). Here, by assigning female officers' days off in a manner different (and less favorable) from how it assigned male officers' schedules, the County treated Plaintiffs differently based on sex, thus discriminating against them.

The statute prohibits discrimination in employee hiring, discharge, and compensation. Beyond that, the statutory phrase "terms, conditions, or privileges" covers all other attributes of the employer-employee relationship with respect to which an employer may not discriminate. "Terms" are "propositions, limitations, or provisions stated or offered for the acceptance of another and determining (as in a contract) the nature and scope of the agreement." *Terms*, Webster's Third Dictionary 2358 (1961). A "condition" is "something established or agreed upon as a requisite to the doing or taking effect of something else." *Condition*, Webster's Third Dictionary 473 (1961). "Privilege" means to enjoy "a peculiar right, immunity, prerogative, or other

benefit." *Privilege*, Webster's Third Dictionary 1805 (1961). Each of these words is defined broadly; taken together, they refer to "the entire spectrum of disparate treatment"—the gamut of workplace requirements, obligations, customs, and benefits that an employer imposes on, or grants to, an employee. *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) (citation omitted). Put differently, "terms, conditions, or privileges of employment" are simply those workplace attributes that "affect employment or alter the conditions of the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 64 (2006). Title VII is thus not limited to injuries that employers or courts view as particularly harmful.

Quite the contrary, the statute establishes no minimum level of actionable harm. In using the phrase "terms, conditions, or privileges," "Congress intended to prohibit all practices *in whatever form* which create inequality in employment opportunity due to discrimination." *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 763 (1976) (emphasis added). "The emphasis of both the language and the legislative history of the statute is on *eliminating* discrimination in employment." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977) (emphasis added). Thus, "Title VII tolerates no racial [or sex] discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

In sum, the statutory phrase "terms, conditions, or privileges" is simply a catchall for all incidents of an employment relationship. This adherence to Title VII's text is why then-Judge Kavanaugh observed that "transferring an employee because of the employee's race (or denying an employee's requested transfer because of the employee's race) plainly constitutes discrimination with respect to 'compensation, terms, conditions, or privileges of employment' in violation of Title VII." *Ortiz-Diaz v. United*

*States Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Kavanaugh, J., concurring). The district court's contrary decision has effectively "rewrit[ten] the statute that Congress has enacted." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018).

**When** officers work is a term or condition of employment. Under this straightforward understanding of Title VII's text, employers may not discriminate with respect "to hours of work, or attendance since they are terms, conditions, or privileges of employment." EEOC Compl. Man., § 613.3, 2006 WL 4672703 (2009). Put differently, "the particular hours of the day and the particular days of the week during which employees shall be required to work are subjects well within the realm of … terms and conditions of employment." *Local Union No. 189, Amalgamated Meat Cutters and Butcher Workmen of N. Am., AFL–CIO v. Jewel Tea Co.*, 381 U.S. 676, 691 (1965) (quotation marks omitted) (observing that when an employee works is a term or condition of employment governed by collective bargaining under the National Labor Relations Act). The Texas Employment Discrimination Act explicitly identifies "hours" as workplace "terms or conditions" and defines a labor organization as existing to, among other things, bargain with respect to "wages, rates of pay, hours, or *other* terms or conditions of employment." Tex. Lab. Code Ann. § 21.002(10) (emphasis added).

Here, the County decides when Plaintiffs must work based on sex. Officers are required to work five days a week and are entitled to two days off. ROA.14; RE.23. Plaintiffs are not able to take their two days off on consecutive weekend days solely because they are female. *Id.* Plaintiffs could not simply disregard the County's sex-based scheduling policy by not reporting for work on the weekends. Had Plaintiffs failed to work their assigned shifts, the County presumably could have disciplined them,

including by firing them. Male officers, on the other hand, enjoy the benefit of taking full weekends off. The County's discriminatory, sex-based shift-assignment policy thus imposes terms or conditions on Plaintiffs' employment (or denies privileges) that would not exist absent the policy.

*Seniority* **is a term, condition, or privilege of Plaintiffs' employment.** "[B]enefits that are part of an employment contract" are terms, conditions, or privileges of employment. *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984). A benefit may also be a privilege of employment even if it is not expressed in an agreement, but simply accorded by custom. *Id.* at 75. Thus, an employment benefit "may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Id.*

Here, detention officers' days off are customarily assigned based on seniority, and they prefer to take weekend days off. *See* ROA.10, 13, 14, 16; RE.19, 22, 23, 25. Put differently, a privilege exists entitling more-senior officers to receive their desired days off, that is, weekend days. The County's sex-based scheduling policy altered that privilege. To be sure, to ensure proper staffing, some detention officers must work some weekends. But the County may not, consistent with Title VII and the Texas Employment Discrimination Act, consign women to work weekends because they are women. Because the County's discriminatory policy altered a privilege of Plaintiffs' employment, it violated Title VII and Texas law, and the district court should be empowered to grant all appropriate relief. *See* ROA.16; RE.25.

**Job responsibilities are terms or conditions of employment.** "Job assignments" are workplace "terms, conditions, or privileges of employment." EEOC Compl. Man.,

§ 613.1(a), 2006 WL 4672701 (2009). Therefore, changing or restricting job responsibilities on the basis of sex violates Title VII. *See Judie v. Hamilton*, 872 F.2d 919, 921-22 (9th Cir. 1989); *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007).

Male and female detention officers have the same titles and job descriptions, but beginning in April 2019, the County prohibited female officers from performing their jobs without a male officer on each shift to advance purported safety interests. *See* ROA.14; RE.23. By categorically treating Plaintiffs as less competent than male officers, this sex-based policy essentially elevated male officers to positions overseeing Plaintiffs' work, effectively diminishing Plaintiffs' job responsibilities. According to the County, "it would be unsafe for all the men to be off during the week." *Id.* Put differently, the County believes female officers incapable of performing their job tasks without a male colleague present. Male officers, in contrast, may complete their job responsibilities without female colleagues' protection and therefore may enjoy the privilege of weekend leave. This discrimination is indisputably based on sex and alters Plaintiffs' terms, conditions, or privileges of employment.

## B. Title VII reaches beyond employment actions with economic consequences.

The district court's suggestion that Title VII is limited to remedying reductions in compensation or other injuries with economic consequences, *see* ROA.104; RE.14, renders the phrase "terms, conditions, or privileges" nearly meaningless. Courts are required "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). The Supreme Court recognizes that "compensation" is separate from other

aspects of employment. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 197 (1991) (noting that Title VII "prohibits sex-based classifications in terms and conditions of employment, in hiring and discharging decisions, and in other employment decisions that adversely affect an employee's status"). For that reason, "Title VII is not limited to 'economic' or 'tangible' discrimination." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Instead, it encompasses even hostile-work environments that alter employment conditions, but do not impose immediate pocketbook harms. *Id.*

If Congress had wanted Title VII to remedy only pocketbook or similar injuries it would have said so, as it has in other employment laws. For example, the Equal Pay Act remedies only compensation-based injuries that flow from sex discrimination. 29 U.S.C. § 206(d)(1). Title VII itself does not reach all workplace discrimination. It bans discrimination based on some characteristics, but not on others, such as weight or familial status, which are protected under other employment statutes, *see, e.g.*, Mich. Comp. Laws Ann. § 37.2102, and it does not apply, for instance, to certain religious entities or to employers with under fifteen employees, 42 U.S.C. §§ 2000e-1(a), 2000e(b).

The district court's holding that Title VII allows an employer to impose discriminatory workplace terms or conditions so long as they do not affect "job duties, compensation, or benefits of the Plaintiffs," ROA.104; RE.14, not only runs roughshod over the statutory text, but conflicts with longstanding EEOC guidance. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 n.6 (2002) (EEOC interpretations entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "The phrase 'terms,

conditions, and privileges,'" the agency has said, "include[s] a wide range of activities or practices which occur in the work place." EEOC Compliance Manual, § 613.1, 2006 WL 4672701 (2009). Thus, even a "request for a temporary change of scheduled days off falls within this language." *Robert L. Weaver, Appellant*, EEOC DOC 01883168, 1988 WL 920346, at *1 (Nov. 16, 1988).

### C. The County's sex-based scheduling policy constitutes an "adverse employment action" even under the district court's impermissibly narrow understanding of Title VII.

We have already shown that the conduct at issue here altered the "terms, conditions, or privileges" of Plaintiffs' employment, which is all that Title VII's text and controlling precedent demands. But even if employees must allege an "adverse employment action"—a phrase that, again, is a judicial creation that appears nowhere in the statutory text—and must do so on the district court's terms, this Court's precedent demonstrates that an across-the-board shift-assignment policy that operates to the detriment of only female employees qualifies. Although a plaintiff's "subjective preference is irrelevant under Title VII," an employment practice is an "adverse employment action," or what this Court terms an "ultimate employment decision," when the employer's change makes the employee's job "objectively worse." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). That is because a "demotion" is "an ultimate employment decision under Title VII." *Id.* at 282.

When a job assignment "proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement," the transfer is "equivalent to a demotion." *Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007). So, for

example, an employee suffered an "adverse employment action" when he was transferred from a law-enforcement job that was "more prestigious, had better working hours, and was more interesting" to a job that was objectively worse. *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 774 (5th Cir. 1996). Work assignments are particularly adverse, when, as here, the allegations show that "everybody views" the assignment as involving inferior "benefits," which include "not just salary," but also working hours, prestige, interest in job duties, and the like. *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992).

According to the district court, this Court has applied the "objectively worse" standard only to cases involving job transfers. ROA.104; RE.14. But that doesn't support the district court's conclusion that the objectively-worse standard is *limited* to job-reassignment cases or that the policy at issue here is lawful. It shows only that this Court has not been confronted by facts similar to those alleged here, perhaps because Title VII is discouraging other employers from implementing openly discriminatory policies like the one here—policies that, more than a half century after Title VII's enactment, should be a relic of the past.

In any case, there is no meaningful distinction between discrimination that takes the form of an individual job reassignment and discrimination that manifests as a blanket policy that, in effect, reassigns all female employees to worse jobs than their male peers. The district court did not grapple with the ways that the County's policy functions like a reassignment policy. The County's sex-based policy required female officers to work with decreased prestige, downgraded job duties, and worse working hours. Although male and female detention officers have the same titles, because of the discriminatory policy the title "officer" meant something different for male and female employees,

causing Plaintiffs' jobs to be less prestigious than their male counterparts. Recall that the Sergeant implemented the policy of depriving female officers weekend leave because he thought it "would be unsafe for all men to be off during the week." ROA.14; RE.23.

One reasonable interpretation of the policy, then, is that the Sergeant sought to ensure a male officer's presence on each shift. *See* ROA.14; RE.23. Drawing this reasonable inference in Plaintiffs' favor, the County disqualified Plaintiffs from performing their material responsibilities without a male detention officer present, constructively demoting Plaintiffs to positions under male officers regardless of Plaintiffs' titles, seniority, or skills. *See, e.g.*, *Judie v. Hamilton*, 872 F.2d 919, 921-22 (9th Cir. 1989) (finding that discriminatory restrictions on responsibilities violates Title VII); *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (diminishing responsibilities based on sex is an adverse employment action). As alleged, Plaintiffs and their male co-workers preferred to take full weekends of leave, ROA.14; RE.23, meaning the County's policy negatively impacted Plaintiffs as judged from the perspective of a reasonable employee, not based solely on Plaintiffs' subjective perceptions.

It makes sense that officers prefer to take weekend days off, ROA.14; RE.23, because working weekends causes "inconvenience resulting from a less favorable schedule," *Ginger v. District of Columbia*, 527 F.3d 1340, 1344 (D.C. Cir. 2008), by, for example, interfering with family obligations and social engagements, *see Spees v. James Marine, Inc.*, 617 F.3d 380, 392 (6th Cir. 2010) (concluding that the employer violated Title VII when it required an employee to work the night shift because of her sex). *See also Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 116 (3d Cir. 1996)

(assigning employee to an undesirable schedule can violate Title VII); *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 845-46 (8th Cir. 2001) (giving female employee a worse on-call duty schedule violates Title VII).

At the end of the day, denying Plaintiffs the leave that their seniority otherwise guaranteed them and requiring that they work less desirable shifts than their male counterparts led, effectively, to across-the-board demotions for female officers.

## Conclusion

This Court should reverse the district court's judgment and remand the case for further proceedings.

Respectfully submitted,

| | |
|---|---|
| Jay D. Ellwanger | /s/ Madeline Meth |
| David W. Henderson | Madeline Meth |
| Jen Despins | Brian Wolfman |
| ELLWANGER LAW, L.L.L.P. | Hannah Mullen |
| 8310-1 North Capital of Texas | GEORGETOWN LAW APPELLATE |
|   Hwy., Suite 190 |   COURTS IMMERSION CLINIC |
| Austin, T.X. 28231 | 600 New Jersey Ave., NW, Suite 312 |
| | Washington, D.C. 20001 |
| James A. Vagnini | (202) 661-6582 |
| Monica Hincken | |
| VALLI KANE & VAGNINI, L.L.P. | |
| 600 Old Country Rd., Suite 519 | |
| Garden City, N.Y. 11530 | |

Counsel for Plaintiffs-Appellants

May 14, 2021

## Certificate of Service

I certify that, on May 14, 2021, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Madeline Meth
Madeline Meth

Counsel for Plaintiffs-Appellants

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,892 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond.

/s/ Madeline Meth
Madeline Meth

Counsel for Plaintiffs-Appellants